Next case, call for oral argument. The last case, call for oral argument is People v. Pitts. Counsel. Good afternoon, your honors. Good afternoon. For a cold, dreary December day. This is a case of People v. Robert Pitts. He was convicted of the first three murders of his parents. And he was joined for trial in the case of a residential burglary that had occurred a couple days before the first three murders. We are arguing that the circuit court improperly joined these cases for trial and that he was prejudiced by this and that this court should reverse the demand for a new trial where these cases will not be joined together and where he may not be prejudiced by the evidence on both sides for that. Under section 111-4A of the criminal code, the court can join for trial different cases if it's part of the same comprehensive transaction. And in this case, that simply is not the case. There is not some comprehensive transaction going on in this. You've got a residential burglary of a woman named Sally Betts. You've got the first three murders of Mr. Pitts' parents in their home. And the only relationship really between this is the state's argument that during the residential burglary, a gun was stolen from Sally Betts and that gun was used in the first three murders. The best that the state can point to is that the gun might have been used. The gun was never found. Certainly that's an inference they could argue, isn't it? There was a .22 stolen, .22 was used. That is the best that they have. Also, wasn't there a statement to the girlfriend about I've got a gun now and I'm going to kill them or something? Which would mean that the need for the residential burglary and saying that he stole this gun then becomes much less. That cuts against the state. No, I'm not following that. I'm not either. Wasn't it subsequent in time to the burglary? What? The statement that now I've got a gun. Right. That would be I have a gun. The girlfriend says that he told her that he got a gun, he has a gun. That people in this country could get a gun very easily is not surprising at all. That he tells her that he has a gun means that indeed he might have some weapon to use. And that cuts against in terms of the need for the residential burglary. The need is a lot less. A state will say that this is more particular that we can point to and say this is 22 and the 22 was used. But actually just a statement that I have a gun and I could use it. Mr. Pitts says that he would have used it on himself rather than his parents. So you're basically arguing that with the statement there's less of a need in balancing the interests for the joinder. In terms of balancing things. In terms of what the circuit court did in this case for the most part. It just looked at the judicial economy of having this as a trial together. And the Illinois Supreme Court in a case called Edwards which we cite in our brief. Disapproved that years and years ago. There's a recent Illinois appellate court case called Walston which we cite in page 20 of our brief. Which also demonstrates that the idea of judicial economy is the wrong idea. When determining whether to have a joint trial. The court in Walston talks about the policy decision. Has already been made by the legislature in 111-4A. And that policy decision is to have separate trials unless they're part of the same comprehensive transaction. Not just because you have some kind of evidence that you think fits together in this case or in these cases. In this case that basically is what the circuit court did. The fact that they found I guess the bank bag and the holster and et cetera in his house. Yes. What about that? In the attic. Yeah. That really doesn't matter to the analysis because that is not part of the comprehensive transaction of Merck. That's just evidence of another crime that has been found. I mean you might presume that there was a gun in the holster? Had there been a gun in the holster? The idea that somebody can have a gun is not unusual. Even if you say that there was this holster found in the attic, you do not have to say that this is from another offense. You do not have to say that this is from another crime that you're supposed to be deliberating upon and mixing things together to make him look like he is an evil person. Well, I thought that the statement, and I think it was recorded to the girlfriend, was something like now I have a gun and I can kill, and there was some kind of profanity, him. And that is very hard to tell from the recording. You can put various spins on it as you listen to it. I and Mr. Pitts says that he did not say that. He says that he said something along the lines that he would be able to kill himself. But if you listen to that, you would have to really listen for a long time to come up with what you might believe is actually said there. The only thing that does come out that is clear is that he says that he does have a gun. And again, that gets back to, that cuts against the need for saying that we have to have this because this shows that he might have the murder weapon. And the state's argument at the hearing on the motion for Joinger was that this was a comprehensive transaction in which he had to go out and do this burglary in order to get the gun. There's no showing of that. That is just speculation. Well, let me ask you one of those what if questions. What if the facts were that he broke into somebody's house, stole the gun, and went directly to home and killed his parents? Would that be different if there weren't two days involved? And is it just the time that we're looking at here? It could be different. I would not say that it would really change the analysis because, again, it's this residential burglary at one place and then later on this murder at another. And there might be certain facts that are relevant between them but not for purposes of Joinger. And the real key for that is getting back to the comprehensive transaction. I mean, they just do not fit together in terms of the joint trial. Let me ask you about something else before you run out of time, okay, on another issue. In the Apolli's brief, he argues that the Terry decision.  I wrote a brief years and years ago, and I looked at it, and I did not. Okay. You didn't make sure, but you agreed. I agreed that the Terry cases on argument three would be controlled. Okay. That's what I wanted to know. And then just touching upon argument two, it's somewhat in line with the arguments about sentencing. But the only thing I would argue in argument two about the nature of the consecutive current sentences is that the state is arguing that there is some need to have consecutive sentencing here in case the actual life terms were vacated. And I would say that that's irrelevant. If their sentences are going to be vacated, then there's going to be a new sentencing hearing, and then there's going to be a determination then whether there should be consecutive sentencing or concurrent sentences. Consequently, we argue to ask Your Honor to reverse the remand for a new trial on argument one and make concurrent sentences on argument two. Thank you, Counsel. Counsel. Good afternoon. I don't have time during a 10-minute argument at the end of a long court day to go over all the very complex evidence in this case. It's all an issue one seat of my brief, and it's not as dull as most briefs because it is actually a fascinating case. But simply as a matter of common sense, getting a gun is part of a comprehensive transaction of killing someone with a gun. If obtaining the weapon is necessarily part of the same comprehensive transaction as committing a murder, and that's particularly true in this case, because this defendant didn't have access to any other weapon according to his own testimony and also according to the fact that he was a convicted felon. He had no money and no car. Stealing the gun from his girlfriend's house was his only available method of getting a weapon other than stealing one from his employer. We know that gun wasn't stolen. And it wasn't just any gun. It wasn't just a .22. It was a .22 loaded with long rifle bullets, which is not ordinary .22 caliber ammunition, and those were the kind of bullets that were recovered from the skulls of the victim. Also, it was a gun which held or could hold ten bullets. And in the defendant's recorded statement to his girlfriend, he didn't just say he had a gun. He said he had a gun with ten bullets. Actually, it was loaded with nine because the chamber was empty, but it could hold ten. Now, and also, this gun was in the most unique kind of holster you could possibly imagine, denim lined with flannel. And that was exactly the same kind of holster that was recovered from the attic of the defendant's home, stuffed with the other proceeds of the burglary of his girlfriend's house. So there's lots of other facts. Again, they're in the brief. But the point I'd like to make is it made absolutely no difference whatsoever if these charges were joined or not. Because at the murder trial, all the evidence concerning the gun would have been admissible under Illinois law anyway. While at the burglary trial, the evidence of guilt was overwhelming, and any mention of murder made no difference. So if there's one rule of law that's very clear in Illinois, it is that it's proper for the state, trying someone for a shooting, to show that this defendant had access to a weapon suitable for use in the crime. And in Issue 2 of my brief, you'll find 11 cases cited for that proposition. I'd just like to cite one because it got all the way up to the U.S. Supreme Court. In People v. Moore, an Illinois Supreme Court decision, the defendant was charged with killing someone with a shotgun. They arrested him six months later and found a shotgun in his possession. Six months later. And, of course, since it was a shotgun, there were no ballistics to prove that this was the weapon. Illinois Supreme Court said the shotgun found six months later was suitable for use in the crime. Therefore, it was admissible. And the U.S. Supreme Court ran insert on another issue. But in their opinion in Moore v. Illinois, they said that was constitutionally permissible and affirmed that ruling concerning the admission of the shotgun. And that's just one of many cases. For example, in the Lilly case, I believe it was this court held, that the fact that someone saw someone holding a revolver, which could have been a weapon used in the shooting, was admissible evidence, even though there was no proof that it was the same weapon. So if these cases had been severed at the murder trial and had been perfectly permissible under well-established and conclusive Illinois precedent, that the people could have introduced evidence that the defendant stole a .22 caliber pistol holding ten bullets, .22 caliber long bullets in a unique denim holster lined with flannel, and that the proceeds of that burglary, minus the weapon which was disposed of, were found in the attic of the defendant's home. Similarly, on the burglary, the evidence of guilt was overwhelming. The defendant had stolen items from his girlfriend twice that month. This was the third robbery involving her. The day after the items were stolen from the Betts residence, the defendant said that he had a gun with ten bullets. The proceeds of the burglary, minus the gun which was disposed of, but including the unique holster, including the pill bottles, the defendant consumed the pills apparently, including receipts with the name of the girlfriend's aunt on them, and things which were admittedly proceeds of the burglary were found in the defendant's attic. So at the murder trial, all the evidence concerning the gun was admissible, even at the severed trial. At the burglary trial, evidence of guilt was enormously overwhelming. And it's, of course, the law that if a joint trial causes no prejudice to the defendant, then you affirm. Now, I'd like to talk about issue two. This court, more than any other court, should know that it really does matter whether you get a consecutive or a concurrent term to a natural life sentence, because this court has vacated on collateral review a lot of well-known murder convictions, like the Simonson case from Marion County, the Bowman case from Metro East, a case involving murder of a newspaper reporter, also from Metro East. This court has vacated a number of murder convictions years or even a decade or more after the conviction. Also, of course, natural life sentences are subject to constitutional challenges, one of which the U.S. Supreme Court is considering at this very moment. So a natural life sentence is always subject to being vacated on collateral review, and it's always subject to being held unconstitutional. Someone could argue that a mandatory natural life sentence for two murders is unconstitutional, and it should be a matter of judicial discretion. So we don't know that this defendant is going to serve a natural life sentence. Also, it could be commuted. Remember the man who shot four police officers in Seattle had his sentence commuted by Governor Huckabee. Now, if a natural life sentence is vacated or commuted, then it matters a whole lot whether sentences for lesser offenses are concurrent or consecutive, because by the time a sentence is vacated on collateral review, if the sentences are concurrent, then they've already been served, and the defendant serves no time whatsoever for the lesser offenses or other offenses, in this case, burglary. Excuse me. In this case, the lesser offenses involved in this case. On the other hand, even if the defendant is convicted on retrial and is sentenced, you can't increase his sentence then, so it's a concurrent sentence of stamp, and there's no time at all served for the lesser offenses. On the other hand, if the sentences are consecutive and the defendant is not sentenced to natural life after retrial or if the natural life sentence is commuted, then he does have to serve time for the lesser offenses as is specifically required by the statute. So it matters a whole bunch whether sentences for lesser offenses are concurrent or consecutive to a natural life sentence. It will be of vital importance if that natural life sentence is ever reduced, if it is ever vacated on collateral review, if it is ever commuted. Therefore, the Palmer decision of the Illinois Supreme Court, which says that natural life sentences can't be consecutive to each other, is not on point. It's not the same kind of facts, and of course, consecutive natural life sentences are meaningless because if one is vacated, you still have to serve the other natural life sentence, and you can't serve more than one natural life sentence. Of course, two other divisions of the appellate court have addressed the exact issue and determined that Palmer was relevant and followed it, right? That is true, and that is why I'm asking you to follow the specific language of the statute and give me a shot at having the Illinois Supreme Court resolve this, shall we say, anomaly or illogical application of Palmer. So, for these reasons, we ask that the conviction be affirmed because it didn't matter one bit whether these cases were tried jointly or separately, and that you apply the specific language of the Illinois statute to the issue of whether the sentences should be consecutive or concurrent. Thank you. Thank you, counsel. Counsel? Touching upon the argument, too, as we note in our brief, there are two appellate court cases that talk about this and have ruled on this issue. And, again, when it's talking about it matters in terms of later on, that later on is going to be another sentencing hearing. You're not increasing the sentence. At any kind of future sentencing hearing, there's going to be some kind of balancing going on as to whether there needs to be a consecutive sentence or not. And so that is when that decision should be made. We believe that Palmer is the case to be followed. In terms of the jointer issue, the state wants to talk about that all this evidence is going to come in, it's going to be relevant, it's going to be admissible, and all those decisions are really supposed to be made by the circuit court to begin with, not looking at it in terms of the jointer going on right now, but in terms of the different trials. And so when he is faced with the different nature of the separate trials, he's going to have to make a balancing decision, and that balancing decision never occurred in this case. He just let everything in because it was a joint trial. And in terms of the prejudice to the defendant, that is where it comes in, because there's no judicial thinking about what is admissible at the trial for the residential burglary and what is admissible for purposes of first-degree murders. Now, there can be some admission, admissible evidence put into that first-degree murder, but the circuit court would have to do some balancing, have to make its judgment on exactly how much of that evidence is going to be put in. And not all that evidence could or needs to be put in. All that needs to be done is to present the evidence for it that proves the first-degree murder. Consequently, we would argue that Your Honor should reverse and remand for a trial in which the circuit court judge is doing that kind of balancing. Thank you, Your Honor. Thank you, counsel. We appreciate the briefs and arguments of both counsel. We'll take the case under advisement.